JOSEPH R. MANNING, JR. State Bar No. 223381
BABAK HASHEMI, State Bar No. 263494
THE LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660
(949) 200-8755 Phone
(866) 843-8308 Fax
ecf@manninglawoffice.com

Attorneys for Plaintiff TYRONE HORN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE HORN,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., a business entity form unknown, SELECT PORTFOLIO SERVICING, INC. a business entity form unknown, DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HOLDERS OF MORGAN STANLEY ABS CAPITAL I INC., TRUST 2007-HE5, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-HE5, a business entity form unknown, NATIONAL DEFAULT SERVICING CORPORATION, a business entity form unknown, and DOES 1-100, inclusive,<br><br>    Defendants. | **Case No.: 14-cv-07506-R-RRM**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SELECT PORTFOLIO SERVICING, INC., NATIONAL DEFAULT SERVICING CORPORATION AND DEUTSCHE BANK NATIONAL TRUST COMPANY'S, MOTION TO DISMISS COMPLAINT**<br><br>[Filed concurrently with Plaintiff's Opposition to Request for Judicial Notice]<br><br>DATE: NOVEMBER 17, 2014<br>TIME: 10:00 A.M.<br>CRTRM: 8-2ND FLOOR |

**TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:**

Plaintiff TYRONE HORN ("Plaintiff") hereby opposes Defendants' SELECT PORTFOLIO SERVICING, INC., ("SPS") NATIONAL DEFAULT SERVICING CORPORATION, and DEUTSCHE BANK NATIONAL TRUST COMPANY's (collectively referred to herein as "Defendants") Motion to Dismiss Plaintiff's Complaint for failure to state a claim.

## I. INTRODUCTION

Plaintiff filed a complaint against Defendants for violations of *California Civil Code* §2924, Breach of Contract, Violations of *California Business & Professions Code* §17200, and a demand for Accounting. Plaintiff will seek leave to amend his complaint for a violation *California Civil Code* §2923.6 based on the October 8, 2014 submission of a loan modification application.

The instant case was filed on September 3, 2014 and prior to Defendants' removal of the case the Superior Court issued a Temporary Restraining Order enjoining Defendants from advertising, holding, conducting or participating in any foreclosure sale and trustee's sale of Plaintiff's property located at **19932 Cantara St., Canoga Park (Winnetka), CA 91306** (the "Subject Property"). After removal of the case, Defendants rescheduled the sale date for October 15, 2014 and then postponed it to November 17, 2014 after Plaintiff moved ex parte to obtain injunctive relief.

Plaintiff's complaint sufficiently alleges facts to establish claims against Defendants for the violations set forth in Plaintiff's complaint.

## II. STATEMENT OF FACTS

In 2006, Plaintiff obtained a first lien mortgage loan in the amount of $516,000 (the "Loan"), secured by the Subject Property through a Deed of Trust, recorded on November 15, 2006, in the Official Records of the Los Angeles County Recorder's Office. The Deed of Trust identifies the lender as WMC Mortgage, Corp, the Trustee as Westwood Associates, a California Corporation, and the beneficiary as Mortgage

Electronic Registration Systems, Inc. ("MERS").

Plaintiff is a borrower as defined by Civil Code § 2920.5(c). Bank of America and then SPS have at all times serviced the Loan in the capacity described by Civil Code § 2920.5(a) and are liable to Plaintiff for their wrongful conduct as alleged in the complaint.

In 2010, Plaintiff suffered financial hardship due to a downturn in the economy and a reduction in his income. As a result, he applied for a loan modification with the then servicer, Bank of America. Plaintiff submitted the requested financial documents to Bank of America and completed the necessary application for loan modification assistance.

Thereafter, Plaintiff received approval from Bank of America and was offered Trial Payment Plan ("TPP") which he accepted. Bank of America indicated that if Plaintiff made three (3) monthly payments, and provided any additional documentation requested, Bank of America would permanently modify the terms of the loan with monthly payments equal to the TPP payments.

Plaintiff fully performed his obligations under the TPP by timely submitting the three required trial payments. After the three month period, following the advice provided by Bank of America's customer service staff, Plaintiff continued making the monthly trial payments for approximately **one year**. However, despite the provisions of the trial payment plan and despite Plaintiff's full performance of the terms of the Agreement, Bank of America refused to provide Plaintiff with the promised loan modification. Thereafter Plaintiff's loan was transferred to Defendant Select Portfolio Services ("SPS"), however SPS would not honor the agreement entered into with its predecessor in interest and Plaintiff's request for mortgage assistance with SPS proved unsuccessful.

Defendants thereafter, recorded a sham Corporate Assignment of the Deed of Trust ("DOT") in an attempt to assign the beneficial interest under the DOT to the Morgan Stanley ABS Capital I Inc., Trust 2007-HE5. (The "Trust"). However, at the time of the attempted assignment, this Trust had already been closed by its own terms and any additional assignments would effectively destroy the Trust's pass through tax status under

the Internal Revenue Code. This act was done solely to initiate foreclosure action on Plaintiff's property and did not in fact correspond with an actual assignment of the beneficial interest of the DOT. Moreover, this was a fraudulent act by Defendants to do what they have failed to do at the appropriate time.

Additionally, following the filing of the Complaint, Plaintiff documented a material change in his financial circumstances and notified Defendants of that change through a written notice, supported by a complete Mortgage Assistance Packet in accordance with Cal. Civ. Code §2923.6(c). Accordingly, the fact that Plaintiff's Property remains in active foreclosure, is proof that Defendants are acting unlawfully.

Plaintiff's allegations of failure to administer the loan modification review properly, the addition of unnecessary charges to the loan balance substantiate Plaintiff's alleged breach of the duty owed to him by Defendants.

### III. ARGUMENT

#### A. Defendants' Motion to Dismiss is Without Merit

The Federal Rules simply require in the complaint a "short and plain statement of the claim showing the pleader is entitled to relief." [FRCP Rule 8 (a)(2)] In *Conley v. Gibson*, 355 U.S. 41 (1957), the United States Supreme Court noted that the Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which they base their claim. To the contrary, all the Rules require is 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiffs' claim is and the grounds upon which it rests."

In ruling on a motion to dismiss, the Court must accept all material allegations of fact alleged in the complaint as true and resolve all doubts in favor of Plaintiff. (*Pareto v. F.D.I.C.*, 139 F. 3d 696, 699 (9th Cir. 1998)). The Federal Rules simply require in the complaint a "short and plain statement of the claim showing the pleader is entitled to relief." [FRCP Rule 8 (a)(2)] Moreover, the Rules require a "short and plain statement of the claim

that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

Motions to dismiss are disfavored, as there exists "'a powerful presumption against rejecting pleadings for failure to state a claim.'" *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) (quoting *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir.1985)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson.* In considering a motion to dismiss, a district court must take as true all well-pleaded allegations of material fact and must construe them in the light most favorable to the plaintiff. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). A court also must take into account all inferences supporting the complaint that a trier of fact reasonably could draw from the evidence. See *Id.*

Even applying the standard set by the case of *Bell Atlantic Corporatin v. Twombly* 550 U.S. 544 (2007) which requires that complaint should have enough factual matter, not just labels, conclusions, and formulaic recitation of the elements of cause of action, the instant case has still sufficient and enough facts to state a claim of relief that is tenable on its face.

With regard to foreclosure-related case, the Ninth Circuit stated that "[c]omplaints need only allege facts with sufficient specificity to notify defendants of Plaintiffs' claims." *Balderas v. Countrywide Bank, N.A.,* 664 F.3d 787, 790 (9th Cir. 2011). "[S]o long as the plaintiff alleges facts to support a theory that is not factually implausible, the court's skepticism is best reserved for later stages of the proceedings when the Plaintiff's case can be rejected on evidentiary grounds." *Id.* at 791 Quoting *In re Gilead Sciences Sec. Litig.,*536 F.3d 1049, 1057 (9th Cir. 2008).

Here, Plaintiff has stated and identified in the Complaint the Defendants and enumerated the different claims against them with sufficient factual support. A complaint may not be dismissed if there is any set of facts set forth in the complaint which will support

a cause of action. When a Court rules on motion to dismiss, it must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the Plaintiffs. In fact, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." [*Bernheim v. Litt,* 79 F.3d 318(1996)].

B. **Defendants' Tender Argument Fails**

Defendants fatally attempt to base the entire motion on their Tender argument. Plaintiff's claims do not require tender. Even so, Defendants presents the "tender" argument as though it were absolute and without exception. This is not the state of the law. First, if the requirement of tender were an absolute rule, everyday homeowners would never be able to challenge even the most egregious foreclosure. This would be a grossly inequitable result and would permit entities to foreclose on properties with impunity. Second, like the *Mabry* decision, a borrower need not tender the full amount of indebtedness to be entitled to her rights under section 2923.5, and the remedy of postponement is not preempted by federal law. *Mabry v. Superior Court,* 185 Cal.App. 4th 208, 213-14 (2010). at 225-31. (Emphasis added.)

The tender rule is not absolute and "'[a] tender may not be required where it would be inequitable to do so.'" *Onofrio v. Rice,* 55 Cal. App. 4th 413, 424 (1997) (quoting 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust & Mortgages, ¶ 9:154) (affirming trial court's grant of relief to plaintiff on rescission claim despite plaintiff's failure to tender).

Based on substantially similar facts, in *Dimock v. Emerald Properties, LLC* (2000) 81 Cal. App. 4th 868, the Court of Appeal held that **tender is not required** when a trustee goes forward with a foreclosure sale without any legal authority to do so. In *Dimock*, even though the original trustee was substituted out for a new trustee, the original trustee conducted the sale anyway. The court held that the foreclosure sale was void and a

complete nullity with no force and effect. Id. at 876. As a result, because the sale was void, the tender rule did not apply. Id. at 878.

Case law makes clear that a Plaintiff is only required to allege a credible offer of tender, not actually tender. *Alicia v. GE Money Bank,* No C 09-00091 SBA, 2009 WL2136969 at *3 (N.D. Cal. July 16, 2009) ("…debtor must allege a credible tender of the amount of the secured debt…"). Moreover, <u>tender is not required when the owner's action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt</u>. *Sacchi v. Mortgage Electronic Registration Systems, Inc.,* No. CV 11-1658 AHM, 2011 WL 2533029 at *16 (C.D. Cal. June 24, 2011) (emphasis added) citing *Onofrio v. Rice,* 55 Cal. App. 4th 413, 424 (1997) In light of the fact that Plaintiffs have contested amount of the default and the legitimacy of the Defendants' claim to accurately credit Plaintiffs' mortgage payments, it would be unreasoned and inequitable to require Plaintiffs to actually tender the amount given that Plaintiffs disputes whether Defendants have actually and accurately credited all of Plaintiffs' mortgage payments. *See Onofrio Id.*

Furthermore, Civil Code § 3412 in like manner provides that "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may upon his application, be so adjudged, and ordered to be delivered up or canceled." *i.e. amount of delinquency on the NOD.* In accordance with the provisions of Cal. Civil code §1692, once the contract(s) has been found to be void and cancelled, the Plaintiff is entitled to restitution of all monies paid, including costs, interest and principal payments. Tender is <u>not a condition</u> of restitution in this case, due to the bad faith impending trustee's sale. However, to the extent necessary without validation of the underlying debt, Plaintiff has the present ability to tender the indebtedness and hereby offer to tender such amount.

1. <u>It is Inequitable To Require Tender in This Case</u>

Tender may not be required where it would be inequitable to do so, *Onofrio v. Rice* (1997) 55 C.A.4th 413, 424.  Because the Subject Property was purchased with a "credit bid," the only tender that could be equitably required to put the credit bidder in a pre-sale condition is 1) cost of the trustee sale, 2) interest and fees, and 3) reinstatement of the preexisting debt which would still be serviced by the creditor but for the sale.  (These fees are disputed and unjustified.)

Where, as here, it may be shown that a sale was knowingly wrongful and without right, equity <u>weighs heavily against requiring</u> the borrower to make a full tender of the challenged debt rather than what is required to put the creditor in a pre-sale position. Defendants will likely argue that the tender in these cases should not be the sale price, i.e., the amount required to put the Defendants in a pre-sale position, but the full amount of the debt. As already stated herein, the tender rule does not apply to any of Plaintiff's claims.

**C. <u>Plaintiff Has Alleged Sufficient Facts to overcome Defendants' Motion to Dismiss their Claim for Breach of Contract</u>**

Plaintiff has pleaded specific facts in support of this claim.   Plaintiff alleges that Defendant Bank of America entered into a binding contract with Plaintiff when it offered Plaintiff a Trial Payment Plan ("TPP") and Plaintiff accepted the TPP through performance.  By virtue of the terms of the TPP Plaintiff was entitled to a permanent loan modification with payments equal to the amount of the TPP upon timely tendering three payments.  SPS and DEUTSCHE BANK are also bound by the terms of this contract by virtue of the fact that SPS was assigned the servicing rights of the loan and DEUTSCHE BANK was a third-party intended beneficiary.

The required elements of a breach of contract claim is that there must have been: (1) an offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by Plaintiff of all required conditions, (5) breach, and (6) damages.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

As for alleged breach of the TPP; Plaintiff was offered a Trial Payment Plan which he accepted through tendering the required payments. Plaintiff was promised that his monthly mortgage payments would be about the same amount as the TPP payments <u>without any further modifications to the original terms of their loan</u>.

Plaintiff has met the "consideration" element of the contract formation by performing under the loan agreement. Under California law, consideration exists even if the performance due "consists almost wholly of a performance already required…" Furthermore, consideration may be either a benefit conferred upon the promisor or a detriment suffered by the promisee.

The alleged agreement thus provided for benefits to Defendants and a detriment to Plaintiff beyond the pre-existing mortgage agreement. Therefore, pursuant to the allegations in this Complaint, there was a valid contract formed, rather than a promise to perform a pre-existing legal duty by Plaintiff. California law recognizes that a detriment constituting consideration includes such "expenditure of time and energy." Defendants breached the terms of the TPP by failing to modifying the original terms of Plaintiff's loan in a manner where he would obtain a permanent loan modification and his loan would no longer be in default.

As a direct and proximate result of Defendants' breaches, Plaintiff has been wrongfully categorized as having "defaulted" on the Loan, and this false label of having "defaulted" impairs Plaintiff's chances of obtaining relief under the California Homeowner's Bill of Rights and has also ultimately resulted in placing Plaintiff at the risk of a wrongful foreclosure of the home. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered, and continues to suffer, general and special damages which include diminution of the ownership interest in the Subject Property and the risk of loss of the Subject Property through foreclosure.

### D. A Servicer Owes a Borrower A Duty Of Reasonable Care While Reviewing Him for a Loan Modification Application Pursuant To *Alvarez v. BAC Home Loans Servicing, LP*

Defendants contend that Plaintiff's negligence claim fails because servicers of loans do not owe a duty of care to borrowers. Defendants rely on the general rule that a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. *Nymark v. Heart Fed. Savings & Loan Ass'n* (1991) 231 Cal.App.3d 1089, 1095-96.

However, the question of duty is not so black-and-white and, thus, not so easily decided on the "general rule." See *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 901 (*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower; rather, the court in *Nymark* based its determination on the balancing of the *Biakanja* factors[1]).

Indeed, California federal and state courts were divided on the question of when lenders owe a duty of care to borrowers in the context of loan modification applications and foreclosure proceedings. The court in *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49 held that a lender does not owe a borrower a common law duty "to offer, consider or approve" a loan modification." *Id*. at 67-68. The recent California Court of Appeal decision in *Alvarez v. BAC Home Loans Servicing, LP* 2014 WL 3883282 (Cal.App. 1 Dist.) clarified that while a lender does not have a duty to offer or approve a modification, ***a lender does owe a borrower duty to exercise reasonable care in the review of a borrower's loan modification applications once the lender agrees to review for a modification***. *Id*. at *11.

---

[1] The *Biakanja* factors consider: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

The Complaint alleges that Defendants undertook the task to review Plaintiff for a loan modification.  Having done so, Defendants owed Plaintiff a duty to exercise reasonable care in processing and reviewing Plaintiff's application.  Defendants breached this duty by (1) failing to review Plaintiff's application in a timely manner and offering him the appropriate permanent loan modification, (2) proceeding to add foreclosure charges while Plaintiff's application was pending and under review, and (3) mishandled Plaintiff's application by relying on incorrect information and misplacing or ignoring documents submitted by Plaintiff.

Applying the *Biakanja* factors, the transaction was intended to affect Plaintiff and it was entirely foreseeable that failing to timely and carefully process the loan modification application could result in significant harm to Plaintiff in that the decision on Plaintiff's application would determine whether she could keep his home.   In addition, Plaintiff's credit rating was also adversely affected, thereby making it more difficult for Plaintiff to secure alternative financing to cure the purported default.

The injury to Plaintiff is certain.  The mishandling of the documents deprived Plaintiff of the possibility of obtaining loss mitigation assistance and Plaintiff's home is now at risk of being sold and she faces an eviction from his home.  Defendants kept Plaintiff engaged in years of inconsistent and duplicative document requests while purportedly reviewing Plaintiff's application, forcing Plaintiff further into default and despite Bank of America's express representation that Plaintiff would receive a permanent loan modification after the successful completion of the TPP period.

There is a close connection between Defendants' conduct and Plaintiff's injuries.  To the extent Plaintiff otherwise qualified and would have been granted a modification, Defendants conduct in misdirecting papers submitted by Plaintiff and ignoring Plaintiff's applications directly precluded the loan modification application from being timely processed or offered.  Throughout this time, Defendants continued to add late fees and foreclosure related charges to Plaintiff's principal balance.

"With respect to whether defendants' conduct was blameworthy – the fifth *Biakanja* factor – it is highly relevant that the borrowers '"ability to protect his own interests in the loan modification process [is] practically nil"' and the bank holds '"all the cards."' *Alvarez*, 2014 WL 3883282 at *11, citing *Jolley*, 213 Cal.App.4th at 900. Plaintiffs lost years applying and reapplying to Wells Fargo for loss mitigation without obtaining a good faith review or accurate and timely assistance from personnel. *Id*. at *11("Borrowers cannot pick their servicers or fire them for poor performance ... Providing limited and low-quality information not only allows servicers to save money on customer service, but increases the chances they will be able to collect late fees and other penalties from confused borrowers.")

The policy of preventing future harm favors imposing a duty of care on an entity in Defendants position. In fact, this is evidenced by the fact that the State of California, through legislation, has enacted the HBOR in an effort to prevent future harm from unnecessary and wrongful foreclosures. Much of Defendants misconduct − failing to process the applications in a timely manner, dual tracking, and losing documents − is conduct now regulated by the HBOR.

### E. **Plaintiff has Sufficiently Alleged Facts in Support of Claim for Violation of §2924 (A)(6)**

Defendants have seized upon the ruling in *Gomes v. Countrywide*, 192 Cal. App. 4th 1149 (2011), by straining the interpretation of its holding to mean that a homeowner cannot challenge a foreclosure or his purported creditor's right to enforce the deed of trust – under any circumstances. *Gomes* held that California Civil Code § 2924(a)(1) does not "provide for judicial action to determine whether the person initiating the foreclosure process is indeed authorized." *Id.* at *1155. But the issue in *Gomes* was not whether the wrong entity had initiated foreclosure; rather, the issue was whether the company selling the property in the nonjudicial foreclosure sale (MERS) was authorized to do so by the owner of the promissory note. *See id*. at 1155 (rejecting the argument that a plaintiff may

test whether the agent initiating the foreclosure has the authority to do so; "[t]he recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the note holder would fundamentally undermine the non-judicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures"). That is, *Gomes* involved a challenge to whether an agent had the authorization of its principal, who was the undisputed beneficiary under the deed of trust, to initiate foreclosure. It was not, as here, a challenge to the principal's claimed status as beneficiary under the deed of trust.

Notably, the *Gomes* court distinguished a case cited by the plaintiff precisely because, in that case, "the plaintiff alleged wrongful foreclosure on the ground that assignments of the deed of trust had been improperly backdated, and thus the wrong party had initiated the foreclosure process. No such infirmity is alleged here." *Id.* Thus, *Gomes* explicitly avoided the scenario pled here, in which "plaintiff's complaint identified a specific factual basis for alleging that the foreclosure was not initiated by the correct party." *Id.* at 1156. *Gomes* is therefore inapposite.

### F. Plaintiff Has Alleged Sufficient Facts for a UCL (§17200) Claim

The elements required to state a cause of action for Unfair Business Practices, Business & Professions Code §17200 ("UCL") are: (1) A business practice; (2) that is unfair, unlawful or fraudulent; and (3) authorized remedy. Bus. & Prof. Code §17200; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 676; *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 317 (damages cannot be recovered, but instead injunctive relief and restitution compelling defendant to return money); William L. Stern, Bus. & Prof. C. §17200 Practice (The Rutter Group 2005) ¶7:116 et seq.; 5 Witkin, California Pro. (4th ed. 1997) Pleading, §§ 735.

To establish standing under Business & Professions Code §17200, Plaintiffs must make a twofold showing: they must demonstrate injury in fact and a loss of money or property caused by unfair competition (Bus. & Prof. Code §17204).

The Complaint adequately alleges Defendants engaged in <u>unlawful</u> acts by failing to acknowledge Plaintiff's notice of material change in financial circumstances, recording a late Assignment to correct their prior failure to timely assign the DOT to the Trust; <u>unfair</u> because they failed to honor the terms of the TPP, therefore caused Plaintiff's loan to remain in default which was the basis of charging late fees. Defendants also engaged in deceptive business practices with respect to the representation made in relation to the modified terms of the loan after Plaintiffs fully accepted and performed their obligation under the TPP. Furthermore, Defendants received the benefit of collecting the trial payments from Plaintiff based on false promises; as such, Plaintiff is entitled to restitution of these moneys.

Business & Professions Code §17200 does not proscribe specific activities, but broadly prohibits any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. Cal. Bus. & Prof. Code §17200. "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group, Inc.* (2000) 81 Cal.App.4th 1153, 1157. In other words, a practice is prohibited as "unfair" or "deceptive" even if not "unlawful" and vice versa. *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 643-644 (2008). Any such act serves the basis for a claim of unfair competition. *Cal-Tech Commn's, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999); *In re Pomona Valley Med. Group*, 476 F.3d 665, 674 (9th Cir. 2007).

By defining "unfair competition" to include any unlawful act or practice, the UCL permits violations of other laws to be treated as independently actionable as unfair competition. *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180. Virtually any law or regulation- federal or state, statutory or common law- can serve as predicate for a §17200 violation. Thus, if a business practice

violates any law it also violates §17200 and may be redressed under that section. *People v. E.W.A.P., Inc.* (1980) 106 Cal.App.3d 315, 319.

The statute "has a broad scope that allows for 'violations of other laws to be treated as unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts and practices not specifically proscribed by any other law.'" *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122, (9th Cir.2009), quoting *Kasky v. Nike, Inc.* (2002) 27 Cal. 4th 939, 949. Therefore, even if the Court determines that one or more of Plaintiffs' other claims cannot stand alone, Plaintiffs' UCL cause of action can still survive.

The independent "unfairness" prong of the UCL is "intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." *Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647, quoting *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1103. A practice is unfair if the court determines that the impact of the practice or act on its alleged victim outweighs the reasons, justifications, and motives of the alleged wrongdoer. *Id.* Unfair conduct under Section 17200 has been commonly defined as conduct that "offends an established public policy or… is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Scripps Clinc v. Superior Court* (2003) 108 Cal. App. 4th 917, 939.

A fraudulent practice under the UCL "require[s] only a showing that members of the public are likely to be deceived" and "can be shown even without allegations of actual deception, reasonable reliance and damage." *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 806, quoting *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 838.

Here, a §17200 claim is appropriate as Plaintiff has pled specific facts in support of this claim. As specifically alleged in the Complaint, Defendants, through their authorized representatives, acted both "unfairly" and "unlawfully" by making false representations designed to deceive Plaintiff. Furthermore, Defendants acted "unfairly" and "unlawfully"

by refusing to offer Plaintiff a permanent loan modification and keeping the Subject Property in active foreclosure, which is a violation of §2923.6(g) after being notified of Plaintiff's material change in circumstances.

Additionally, the charging of unnecessary and unreasonable fees on Plaintiff's loan by use of deceptive procedures and concealing the true character, quality, and nature of these assessments as alleged in the Complaint is a deceptive practice that results in injury to Plaintiff and other similarly situated borrowers. Moreover, the pleaded facts as well as testimony and discoverable evidence will further a high level of deception in the course of Defendants' conduct and representations.

### 1. Plaintiff Has Standing to Bring a UCL Claim

Plaintiff has standing to assert this claim because he has specifically suffered injury in fact, including loss of equity in the home (by growth in amounts of delinquent interest, declining property value and late fees), costs and expenses related to protecting himself, fees and costs, including, without limitation, attorneys' fees and costs and higher cost of obtaining credit due to the deterioration of credit scores.

Plaintiff relied to his detriment on incomplete and inaccurate disclosures, which led to incurring late fees, delinquent interest, legal costs, and precluded him from effectively transferring and/or encumbering the Subject Property. Plaintiff have further suffered financial injuries as a result of Defendants' wrongful conduct relating to loss of equity in the Subject Property. Such losses have been found sufficient to confer standing. *See Aron v. U-Haul Co. of California* 143 Cal.App. 4th 796, 802-3 (2006).

In addition, being charged <u>marked-up and unnecessary fees constitutes injury in fact.</u> (See *Hale v. Sharp Healthcare* (2010) 183 Cal. App. 4th 1373, 1383-1384, patient's UCL claim against hospital adequately alleged standing where plaintiff alleged she was promised services at regular rates but was charged excessive rates. Although plaintiff paid only $500 of her $14,448 bill; patient faced at least an imminent invasion or injury to

a legally protected interest.)  As alleged in the Complaint, Plaintiffs are unable to bring the loan current due to the unnecessary fees added to the loan balance.

Plaintiff is also at risk of losing the home and reasonably believes that foreclosure is imminent. **Risk of foreclosure constitutes injury in fact**. See *Sullivan v. Washington Mutual Bank* (2009) WL 3458300 at *4-5 (N.D. Cal. Oct. 23, 2009) (concluding that the initiation of foreclosure proceedings put the plaintiff's interest in her property sufficiently in jeopardy to allege an injury under §17200).

Under the UCL "[a]n injury to a tangible property interest, such as money, generally satisfies the 'injury in fact' element for standing." … "injury in fact" … [means] … "'an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" … "'Injury-in-fact is not Mount Everest. "The contours of the injury-in-fact requirement, while not precisely defined, are very generous," requiring only that claimant "allege some specific, 'identifiable trifle' of injury".' " *Hale*, supra, 183 CA4th at 1381-84 (internal citations omitted.)

Plaintiff has pled clear and convincing factual allegations demonstrating Defendants' unlawful, fraudulent or unfair business practices. Based on the facts pled, a trier of fact could find Defendants' failure to comply with its mandate under the HBOR and the National Mortgage Settlement to be contrary to public policy, immoral, unethical, oppressive, and substantially injurious to consumers, and therefore, a §17200 claim is appropriate as Plaintiff properly pled claims for violations of §2924, 2923.6, breach of contract, negligence and other meritorious claims in the Complaint. Through discovery facts in support of these claims and other unfair business practices will have additional factual support and are likely to lead to a decision in favor of Plaintiff.   Accordingly, Plaintiff properly pled a viable claim for Business and Professions  Code §17200, and the motion to dismiss should be denied.

### G. <u>Plaintiff Has Properly Demanded an Accounting</u>

Plaintiff requests SPS and BANK OF AMERICA, as the purported servicers and creditors of Plaintiff's loan, account for all payments made by Plaintiff and for the accrued default-related fees imposed by them.

To state a claim for an accounting, a plaintiff must show "that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due that can only be ascertained by an accounting." *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179. "[T]he purpose of the accounting is, in part, to discover what, if any, sums are owed to the plaintiff, and an accounting may be used as a discovery device." *Id.* at 180.

A right to an accounting is derivative; it must be based on other claims. *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 593-594. Defendants charged Plaintiff's account for excess charges and fees, which fees are not allowed by law. The extent to which such fees are improperly marked-up or otherwise not authorized are concealed by Defendants' failure to identify the nature of the fees imposed. Consequently, any amount Plaintiff owes is subject to equitable offset by damages owed by Defendants.

Plaintiff's request for an accounting is clearly based on the same set of circumstances that is the basis for most of the claims in the Complaint – the collection of money that is not actually due to Defendants. Because Plaintiff has plead viable claims that are related to the same facts under which they request an accounting, they have sufficiently met their burden of proof.

///
///
///

## IV.     CONCLUSION

Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff's Complaint. Plaintiff contends to have sufficiently alleged that Defendants breached the terms of the TPP, were negligent and persistently violated Civil Code §§2923.6 and 2924.  Further, Defendants, by their conduct, engaged in unlawful, unfair or fraudulent business practices with respect to Plaintiff's property and the subject loan, which caused Plaintiff's injury.

In the event that the Court is inclined to grant Defendants' motion, Plaintiff respectfully requests the court to grant leave to amend the Complaint to cure any potential deficiencies and add additional factual basis in support of these claims.

Dated: October 27, 2014         **Law Offices of Joseph R. Manning, Jr.**
                                **A PROFESSIONAL CORPORATION**

                                  /s/ Joseph R. Manning, Jr.
                                Joseph R. Manning, Jr., Esq.
                                Attorneys for Plaintiffs

# PROOF OF SERVICE - CCP.1013A
## STATE OF CALIFORNIA, COUNTY OF ORANGE

I, the undersigned, am employed in the County of Orange, State of California. I am over the age of eighteen (18) years and not a party to the cause. My business address is 4667 MacArthur Blvd., Suite 150, Newport Beach, CA 92660.

On October 27, 2014, I served the true copies of the foregoing document described as **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** on the interested parties in this action, addressed as follows:

**Served Electronically Via the Court's CM/ECF System:**

*Attorneys for Defendants Select Portfolio Servicing, Inc., National Default Servicing Corporation and Deutsche Bank National Trust Company*
Marvin B. Adviento
WRIGHT, FINLAY & ZAK, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this affidavit was executed on October 27, 2014.

\_\_\_/S/ Babak Hashemi_____